WILLIAM DAWSON *vs.* JAMES H. MAYALL, impleaded, etc.

February 16, 1891.

**Partition—Evidence.**—Evidence *held* sufficient to sustain the finding of the court as to the proportions in which the parties owned real estate.

**Public Land—Patent—Misnomer.**—In a patent of land the name was given "Le Claine" instead of "Le Claire," the true name. As both parties claim under the patent as though the name were Le Claire, that, as between them, must be taken to be the true name of the patentee.

**Same—Patent on Entry on Behalf of Heirs—Error of Land-Officers, by whom Questioned.**—Where the United States land-officers construe an entry of land to have been made by a party as administrator of a deceased person, on behalf of the heirs of such person, and that the entry was one which could be so made, and a patent issues accordingly, no one but the United States, or some one having an interest in the land, can complain of error or mistake on the part of such officers.

**Same—Estoppel to Claim against Patent.**—The patent issued to the person entering the land, "for the use of the heirs-at-law" of another, was accepted and acquiesced in by him. *Held*, that he could not afterwards claim against the patent.

**Same—Land Patented to Heirs not Part of Decedent's Estate.**—Land patented to heirs of a deceased person under section 2269, Rev. St. U. S., is no part of the estate of such deceased person, and is not subject to administration as such.

**Evidence—Pedigree—Declarations of Deceased Person.**—Declarations of a person, since deceased, he having been a relative of the family with respect to which they were made, are admissible upon matters of pedigree, including descent and relationship, births, marriages, and deaths, and the times when those events happened.

Appeal by defendant Mayall from an order of the district court for Ramsey county, *Otis*, J., presiding, refusing a new trial.

*Walter H. Sanborn, O. M. Metcalf*, and *A. P. Weld*, for appellant.

*John D. O'Brien* and *John F. Fitzpatrick*, for respondent.

GILFILLAN, C. J.[1] In this action in partition the court below ad-

---

[1] Vanderburgh, J., took no part in this decision.

judged plaintiff to be the owner of an undivided two-fifths, and the defendant James H. Mayall of an undivided three-fifths, of the land contested on this appeal. The defendant claims the court below erred in adjudging plaintiff to have any title, but, if he has any title, it erred in adjudging him to have two-fifths. Both parties claim through heirs of one Michel Le Claire, who appears to have died prior to 1850, leaving nine children, Baptiste, Edward, William, Mary, Margaret, Adele, Peter, Antoine, and Sophia. It appears by a deed from Peter (conceding that to be evidence of the fact) that March 30, 1860, William, Edward, Baptiste, Margaret, and Sophia were dead, the latter leaving, as otherwise appears, a husband, and daughter named "Sophia," so that the shares in the estate, originally nine, were reduced to five. In 1866 and 1867, Peter, Mary, and Adele, each entitled to one of the five shares, made conveyances under which defendant claims. Of the other two shares Antoine held one, and the heirs of the sister Sophia held the other. The husband of the sister Sophia died before her daughter Sophia, so that the fifth was in her. The evidence, such as it is, does not show distinctly when the latter Sophia died, whether before the deed of Mary in 1867, in which case one-fourth of her interest vested in Mary and passed by her deed, or after that deed. The first evidence (conceding it to be such) furnishing a date for her death is the deed of Antoine in 1881, how long before which date does not appear. As she thus appears to have been alive in March, 1866, and to have died between that date and 1881, we think the court below justified in concluding that she was not dead at the date of Mary's deed in 1867. On her death her interest vested in her surviving uncles and aunts, and as each of those died, his or her share vested in the survivors, until, at the date of Antoine's deed, he alone survived, and under that deed plaintiff derives title.

It appears that Michel Le Claire occupied the land, which was government land, up to his death, but had never purchased nor entered it at the land-office, and that after his death his family continued to occupy it. In 1850, William H. Forbes, his administrator, entered and paid for it, and in 1852 a patent issued to "William H. Forbes, administrator of Michel Le Claine, (Le Claire,) deceased, and

to his heirs, for the use of the heirs-at-law of the said Michel Le Claine, (Le Claire,) and their heirs and assigns forever;" "to have and to hold unto the said William H. Forbes and said heirs for the use of the said heirs-at-law, and their heirs and assigns, forever." The name in the patent, as also in the papers preceding it, executed to perfect the entry, appears as "Le Claine" instead of "Le Claire," but it sufficiently appeared that this was a clerical error involving one letter, and that there was no person connected with the land of the name of Le Claine. It does not appear that any one of that name ever claimed under the patent, or that Forbes was administrator for any one of that name. Both these parties claim under the patent as though the name were Le Claire, and both must be taken to admit that to be the right name. But the defendant claims that in the entry papers the words "administrator of," etc., were merely descriptive of the person making the entry, and not indicative of the character in which he made it, and that it was consequently the individual entry of Forbes, not one on behalf of the heirs of Le Claire; that Forbes was therefore entitled to a patent to himself as an individual, and that the patent to him for the heirs of Le Claire is void, and that the entry was not a pre-emption entry; that a pre-emption entry is the only one which, under the laws of the United States, can be made by an executor or administrator on behalf of the heirs of a person deceased, the only case in which the patent may inure to the heirs "as if their names had been especially mentioned;" that the entry cannot be sustained in behalf of the heirs, and must therefore be held an entry by Forbes in his own behalf.

The entry and purchase were made by location of a land-warrant issued to a soldier under the act of congress of February 11, 1847. The papers relating to the entry were not sufficient for a pre-emption entry, but one of them, the affidavit of Forbes, indicates such a condition of things that the land-warrant could not have been located on the land except in payment of a pre-emption in behalf of the heirs of Le Claire, as it indicates actual settlement and cultivation of the land. It suggests a right to pre-emption in their behalf. The land-officers appear to have construed the entry as made by Forbes in

behalf of the heirs, the entry to have been one which could be made in their behalf. If there was mistake or error in this, no one but the United States, or some one having an interest in the land, could complain. The patent appears to have been issued on the decision of the land-officers that the entry might be made and was made on behalf of the heirs. Forbes, having accepted and acquiesced in the patent as it issued for the use of the heirs, could not afterwards be heard to claim against it. Nor did he ever make any such claim, but always treated the land as belonging to the Le Claire estate.

As to defendant's claim under the sale and deed by the administrator of Le Claire's estate, it is enough to say that the land never belonged to him so as to become subject to administration as part of his estate. The privilege of pre-emption, where "a party entitled to claim the benefit of the pre-emption laws dies before consummating his claim," is for the benefit of the heirs, not of the estate. The title under the patent inures to them by virtue of the act of congress, and not by the laws of descent.

To prove who were the heirs of Michel Le Claire, and when and in what order they died, the court admitted the declarations of Antoine, son of Michel, (he, Antoine, being dead,) made in his lifetime to his wife and sons. Though that sort of evidence is in the nature of hearsay, it is, from necessity, excepted from the general rule excluding hearsay. So, the declarant being dead, and he having been related to the family with respect to which they were made, his declarations upon matters of pedigree, including descent and relationship, births, marriages, and deaths, and the times when these events happened, are received. 1 Greenl. Ev. §§ 103, 104. Under the same rule the statements in the deeds of Antoine and Peter, they being dead at the time of the trial, such as this, "also as heir-at-law of my late brother, Edward Le Claire, deceased," were evidence of the relationship and of the death before the making of those deeds.

Order affirmed.