FRANK GEISLER, JR. v. WILLIAM GEISLER AND OTHERS.[1]

November 7, 1924.

No. 23,712.

**Marriage of parents of illegitimate child makes it heir of other children.**
1. The marriage of the mother of an illegitimate child to its father under the statute legitimates the child; and a child so legitimated is an heir of other children born to its parents.

**How fact of legitimacy is provable.**
2. The fact of legitimacy or illegitimacy is provable by family history, reputation and tradition, and by declarations of deceased members of the family.

**Interested heir may testify to family tradition.**
3. The statute provides that no person interested in the event of an action shall be competent to give evidence "concerning any conversation with, or admission of, a deceased or insane party or person relative to any matter at issue between the parties." This statute does not prevent an heir interested in the estate from giving evidence of family history and reputation or tradition, or of declarations of a deceased member of the family, tending to show illegitimacy of one claiming to be an heir.

**Finding of court sustained by evidence.**
4. The evidence sustains a finding that the appellant, an illegitimate child, whose mother afterwards married, was not a daughter of the man whom her mother married.

**New trial granted.**
5. A new trial should have been granted upon the ground of newly discovered evidence.

William Geisler and Christopher Geisler petitioned the probate court for Hennepin county to exclude Emma Geisler from sharing in the distribution of the estate of Louis Geisler, deceased. The matter was heard by the court and judgment ordered in favor of

[1]Reported in 200 N. W. 742.

respondents. From the decree of the probate court, Emma Geisler appealed to the district court for that county where the appeal was heard by Leary, J., who affirmed the decree. From an order denying her motion for a new trial, Emma Geisler appealed. Reversed.

*Francis Muekel,* for appellant.

*Healy & Peterson* and *C. A. Lindbergh,* for respondents.

DIBELL, J.

Appeal from the order of the district court of Hennepin county denying a motion for a new trial. The matter was heard in the district court upon an appeal from the probate court. The decree of the probate court which vested the estate of Louis Geisler in William and Christopher Geisler, to the exclusion of the appellant, Emma Geisler, was affirmed.

1. Emma Geisler, born in 1856 or 1857, was an illegitimate child of Caroline Wittlieb, who married William Geisler on March 14, 1858. To this marriage three sons were born, Louis, William and Christopher. William Geisler, Sr. died in 1889, and Caroline, his wife, in 1886. Louis died intestate on March 9, 1918. If Emma was the daughter of the Senior Geisler his marriage with her mother legitimated her and she inherited as an heir of Louis. G. S. 1913, §§ 7105, 7240. Under some statutes an illegitimate child legitimated by subsequent marriage of its parents does not inherit from the other children who are legitimate at birth. Our statute intends no such distinction. See 1 Woerner, Am. Law Adm. (3d ed.) § 75; 5 Cyc. 634-636; 7 C. J. 962. The probate court found that Emma was not the daughter of William Geisler. Its decree was affirmed by the district court. The estate was decreed to William Geisler and Christopher Geisler. The decree is correct if Emma was not the daughter of Geisler. It is incorrect if she was.

2. The fact of Emma's relationship, that is, the question of her legitimacy or illegitimacy, was provable by declarations of the Senior Geisler or members of the family or by family history, reputation or tradition. Such testimony is referred to loosely as pedigree testimony. Usually the facts, as in this case, are so ancient

that testimony of living witnesses cannot be had. Family declarations and family history, reputation and tradition are quite safe enough for careful use. The cases are not at all in harmony as to the limits of the rule nor as to what is included in the general designation of pedigree testimony; but the rules which we have narrowly stated are well enough recognized. 3 Wigmore, Ev. §§ 1480-1503, §§ 1605-1606; 2 Jones, Ev. § 312, et seq.; 4 Chamberlayne, Ev. § 2910, et seq.; McKelvey, Ev. p. 323, et seq.; Dawson v. Mayall, 45 Minn. 408, 48 N. W. 12; Houlton v. Manteuffel, 51 Minn. 185, 53 N. W. 541.

It is commonly said that such evidence is an exception to the hearsay rule. It did not become an exception by a process of exclusion. It was never within the rule. The development of the hearsay rule did not proceed so far as to include it among the classes of testimony excluded.

3. The question is upon the competency of the witnesses who gave testimony of family history, reputation or tradition, or of declarations of deceased members of the family. Chris Geisler testified against Emma as to such matters. He was an interested party. Our statute reads:

"It shall not be competent for any party to an action, or any person interested in the event thereof, to give evidence therein of or concerning any conversation with, or admission of, a deceased or insane party or person relative to any matter at issue between the parties." G. S. 1913, § 8378.

The statute cannot be evaded by permitting a witness to give his conclusions or deductions drawn from a conversation. Theodore Wetmore & Co. v. Thurman, 121 Minn. 352, 141 N. W. 481, and cases cited. An interested witness, it has been held, cannot testify that certain statements were not made in a conversation. Redding v. Godwin, 44 Minn. 355, 46 N. W. 563. The policy of our law, declared by statute (G. S. 1913, § 8375), is, however, to regard as competent interested witnesses, leaving the fact of interest to affect their credibility; and the statute relative to the testimony of witnesses as to conversations or admissions of deceased persons, is to

be construed strictly against its exclusion. Keigher v. City of St. Paul, 73 Minn. 21, 75 N. W. 732; Chadwick v. Cornish, 26 Minn. 28, 1 N. W. 55.

In Whalen v. Nisbet, 95 Ky. 464, 26 S. W. 188, testimony of a party in interest as to pedigree was received in evidence. It was claimed to be inadmissible as coming from an interested witness. The Kentucky statute then provided as follows:

"No person shall testify for himself concerning any verbal statement of, or any transaction with, or any act done or omitted to be done by * * * one who is of unsound mind or dead when the testimony is offered to be given except for the purpose, and to the extent of affecting one who is living, and who * * * heard such statement, or was present when such transaction took place, or when such act was done or omitted." Kentucky Civ. Code, § 606 (2).

The court said:

"In our opinion that provision has application to testimony, original in character, given in an action by one party to the prejudice of another party claiming under or through a dead person whose statement is offered to be proved; not to testimony concerning a declaration of a dead person as to a matter of pedigree that is, though hearsay in character, made, according to long established rule, competent from necessity."

We find no other case which expressly touches this question. We are of the opinion that the statute was not intended to exclude such testimony. Our statutes, in harmony with statutes generally, make competent as witnesses interested parties leaving the fact of their interest to affect their credibility. This is the reason of the rule of strict construction against exclusion to which we have adverted. It is not a too strained construction that family tradition and declarations of decedents as to facts of family history, long received almost from necessity to prove facts of pedigree and the like, do not constitute a "conversation" or "admission" within the meaning of the statute.

4. The evidence sustains the finding of the trial court that Emma was not Geisler's daughter. There was evidence of family repute and tradition and of declarations to that effect. Emma's own testimony was against her. She was mentally defective, but the weight of her testimony was for the trial court. The evidence is sufficient to sustain a contrary finding. There is evidence of family understanding and tradition and of the senior Geisler's declarations. He treated Emma as one of the family and as a daughter. She grew up in the family as a daughter. He wrote her name in the family Bible. They were church-going people. She was brought up like the other children. We cannot hold the finding that Geisler was not Emma's father unsupported by the evidence. If we were making the finding we might make it otherwise; but it was for the trial court.

5. One ground of the motion for a new trial is newly discovered evidence.

The testimony which the appellant offers to produce is largely that of members of the Wittlieb family who reside at or in the vicinity of Chicago. The proffered testimony tends to show that Caroline Wittlieb's brother, now deceased, lived in Minnesota from 1855 to 1860; that he declared that the appellant was the daughter of the senior Geisler; that the latter admitted it to be so; and that such was the common understanding by way of tradition and reputation in the Wittlieb family. There is other evidence offered of witnesses resident in Minnesota of value in determining the issue.

Whether a new trial should be granted upon the ground of newly discovered evidence is largely within the discretion of the trial court. Dunnell, Minn. Dig. § 7123-7128, and cases cited. Delay and lack of diligence are suggested by the respondents; but on the whole they are sufficiently explained and excused. The appellant, because of her mental condition, could be of no aid in suggesting or securing evidence. The testimony of the proposed witnesses can be procured without much delay. Some of it may aid in reaching a right conclusion on the controlling issue. The respondents will not be inconvenienced much. The evidence in support of the controlling finding is not entirely satisfactory and it is desirable that

additional evidence, if material, be had. In the view of the court this is one of the unusual cases where the showing made requires a new trial.

The writer does not concur in the view that a new trial should be granted upon the ground of newly discovered evidence.

Order reversed.