CRAIG CAMPBELL, M. D. v. ST. MARY'S
HOSPITAL AND OTHERS.

252 N. W. 2d 581.

March 25, 1977—No. 46742.

*Holmes, Eustis, Kircher & Graven* and *Warren P. Eustis*, for appellant.

*Johnson, Fredin, Killen, Thibodeau & Seiler, John J. Killen,* and *Steven C. Fecker,* for respondents St. Mary's Hospital and its personnel.

*Halverson, Watters, Bye & Downs, Gene W. Halverson, Michael Q. Lynch,* and *C. M. Fredin,* for respondents Duluth Surgical Board of Recommendations and its members.

*Donovan, McCarthy, Crassweller, Larson, Barnes & Magie* and *Charles T. Barnes,* for respondent The Duluth Clinic, Ltd.

ROGOSHESKE, JUSTICE.

Following termination of his medical staff privileges as a surgeon by defendant St. Mary's Hospital in October 1975, plaintiff, Dr. Craig Campbell, brought this action seeking injunctive, declaratory, and monetary relief arising from allegations of denial

of due process, breach of contract, interference with business relationships, defamation, and conspiracy.[1] Upon motions for summary judgment made both by defendants and plaintiff, the trial court ruled in favor of defendants, finding that plaintiff's surgical privileges were terminated with proper regard to his due process rights under both the Federal and state constitutions. While we find no showing of state action on the part of any named defendant to raise plaintiff's due process claims to a constitutional dimension, we nevertheless hold that plaintiff was afforded fundamental fairness as to all of what may be termed his contractual due process rights under the bylaws, rules, and regulations governing medical staff privileges granted by St. Mary's Hospital. Finding no genuine issue as to any material fact to support plaintiff's other alleged claims, we affirm the trial court's award of summary judgment to defendants.

For approximately 3 years prior to this action, plaintiff practiced surgery in Duluth as a board-certified surgeon licensed to practice in Minnesota. During the early part of 1975, plaintiff was an employee of the Duluth Clinic and was also an active member of the surgical staff at St. Mary's Hospital. As a condition precedent to his hospital appointment, plaintiff agreed to abide by the bylaws, rules, and regulations governing the medical staff of the hospital, pertinent parts of which are printed in the appendix. The Duluth Surgical Board of Recommendations is a local review organization comprised solely of surgeons that has since 1935 served St. Mary's and the two other Duluth hospitals in an advisory capacity with regard to the granting of surgical privileges.

---

[1] Apart from the claims made against St. Mary's Hospital, the Duluth Surgical Board of Recommendations, which had recommended revocation of plaintiff's privileges, was sued for denial of due process, interference with business relationships, defamation, and conspiracy. Plaintiff also alleged that his former employer, Duluth Clinic, Ltd., had engaged in a conspiracy with these defendants. All other defendants appear to be either officers, employees, or members of the above specified defendants.

In April 1975, a surgeon on the staff of the Duluth Clinic asked to meet with the Duluth Surgical Board of Recommendations to discuss problems which had arisen in connection with plaintiff's surgical practice. After a meeting with this surgeon, the board advised all Duluth hospitals that plaintiff should be allowed to perform major surgery only under the observation of another surgeon as sponsor. This recommendation by the board prompted the administrator of St. Mary's to notify plaintiff on April 25 that he would be required to have sponsors for all major surgery. Although plaintiff was entitled under the board's operational principles to appeal the sponsorship recommendation, he elected not to do so.

This sponsorship program continued until July 14, 1975, when the Duluth Clinic, which had previously provided sponsors for plaintiff, terminated his employment.[2] Alerted by these developments, the administrator of St. Mary's requested the chief of staff on July 22 to implement Art. IV of the hospital's bylaws providing for an investigation into the performance of a member of the medical staff. On July 25, a special investigating committee was appointed pursuant to Art. IV, § 1(b), and on that same date plaintiff was notified that his surgical practice was under investigation which could ultimately result in a reduction or suspension of his staff privileges. The committee then reviewed each chart of every patient treated by plaintiff at St. Mary's, and was able to document 231 separate medical deficiencies in 86 patient histories. On August 6, plaintiff was given an opportunity to meet with the committee and, assisted by counsel, to respond to the criticized cases. The following day, the committee made a report to the executive committee of the medical staff, as required by the bylaws, and unanimously recommended that plaintiff's surgical privileges be terminated.

[2] In a companion case, plaintiff moved to compel arbitration of his dismissal from the Duluth Clinic. This motion was denied by the trial court and his appeal to this court was dismissed on June 7, 1976, for failure to prosecute. See Supreme Court File No. 46668.

Plaintiff was thereafter promptly advised by letter that the investigating committee's recommendation had been adverse, and that under Art. V of the bylaws he was entitled upon request to a formal hearing before a special ad hoc committee of the executive committee. After a timely request was made by plaintiff's attorney, a hearing was scheduled for August 21. Prior to the hearing, which was continued to September 3 at plaintiff's request, he was given a copy of the written findings of the investigating committee and was also afforded the opportunity of reviewing the 86 criticized cases. He was not, however, given access to the reports made by his sponsors because these reports covered operations performed not only at St. Mary's but also at the other two hospitals in Duluth.[3]

While these proceedings were in progress at the hospital, the Duluth Surgical Board of Recommendations met to reconsider plaintiff's status. Following a recommendation by this board on August 15 that plaintiff's surgical privileges be totally revoked, the administrator of St. Mary's exercised her authority under Art. IV, § 2, of the bylaws and summarily suspended plaintiff's privileges. Plaintiff again chose not to appeal the adverse recommendation of the Duluth Surgical Board of Recommendations as he was entitled to do under that body's operational principles. He did appeal his summary suspension by the administrator, which was consolidated with the hearing before the ad hoc committee.

On September 3, the continued ad hoc committee hearing was reconvened, and plaintiff was given a full opportunity, aided by an attorney, to present his case. After thorough consideration of the evidence, including expert testimony from Dr. William Holden, who testified on behalf of plaintiff, the ad hoc committee recommended to the chief of staff that plaintiff not have major

---

[3] The Duluth Surgical Board of Recommendations later offered plaintiff the opportunity to read the sponsor reports under the stipulation that he and his counsel only be allowed to take notes. Plaintiff rejected this stipulation.

surgical privileges at St. Mary's. This proposed restriction was then reviewed by the full executive committee, as provided by Art. V, § 2(c), and on September 12, this body submitted its recommendation to the board of trustees of St. Mary's Hospital that all of plaintiff's surgical privileges be rescinded.

In strict compliance with Art. V, § 3, of the bylaws, plaintiff was advised in writing of the executive committee's adverse recommendation and of his right to request a formal review hearing before the medical staff committee of the board of trustees. Plaintiff requested and was given such a hearing on October 6, following which the medical staff committee recommended to the board of trustees that plaintiff's surgical staff privileges at St. Mary's be terminated. This recommendation was endorsed by the board of trustees at its regular meeting on October 21, and plaintiff's final termination became effective October 23.

In considering the cross-motions for summary judgment made by both plaintiff and defendants, the trial court operated from the premise that "[t]he gravamen of plaintiff's case concerns his allegation that he was denied due process of law in the rescission of his surgical privileges." If plaintiff was afforded due process, the court reasoned, his remaining claims for breach of contract, interference with business relationships, defamation, and conspiracy would necessarily become moot. The court went on to presume, without elaboration, that state action existed to bring the due process requirements of both the Federal and state constitutions into play and ultimately concluded that defendants were entitled to summary judgment since plaintiff had been afforded due process throughout the proceedings to revoke his surgical privileges.

The threshold question which we must resolve on this appeal is whether the trial court correctly found the existence of state action on the part of defendants, particularly St. Mary's Hospital. It is of course elementary that the due process provisions of the Fourteenth Amendment and Minn. Const. art. 1, § 7, apply only if the actions to terminate plaintiff's surgical privileges were done under color of state law. As most recently explained

by the United States Supreme Court in Jackson v. Metropolitan Edison Co. 419 U. S. 345, 349, 95 S. Ct. 449, 453, 42 L. ed. 2d 477, 483 (1974):

"The Due Process Clause of the Fourteenth Amendment provides: '[N]or shall any State deprive any person of life, liberty, or property, without due process of law.' In 1883, this Court in the *Civil Rights Cases*, 109 U. S. 3, affirmed the essential dichotomy set forth in that Amendment between deprivation by the State, subject to scrutiny under its provisions, and private conduct, 'however discriminatory or wrongful,' against which the Fourteenth Amendment offers no shield. *Shelley v. Kraemer*, 334 U. S. 1 (1948)."

Accord, Nietzel v. Farmers & Merchants State Bank, 307 Minn. 147, 238 N. W. 2d 437 (1976).

While there is no doubt that the operation of a public hospital would constitute state action, the issue becomes considerably more complex when considering the activities of hospitals which, like St. Mary's, are wholly private. Courts from other jurisdictions that have dealt with this question have generally looked to the degree of entanglement that exists between a hospital's public and private functions. One line of cases, best exemplified by Simkins v. Moses H. Cone Memorial Hospital, 323 F. 2d 959 (4 Cir. 1963), certiorari denied, 376 U. S. 938, 84 S. Ct. 793, 11 L. ed. 2d 659 (1964), has held that when a private hospital receives Federal funds, such as are provided for construction under the Hill-Burton Act,[4] there is sufficient state action to require the hospital to conduct its activities in compliance with the Fourteenth Amendment. See, also, Sams v. Ohio Valley General Hospital Assn. 413 F. 2d 826 (4 Cir. 1969). In another line of authority, the courts have been far more reticent to predicate the existence of state action solely on the receipt of Federal or state funds. In Ward v. St. Anthony Hospital, 476 F. 2d 671 (10 Cir.

---

[4] The Hill-Burton Act provides Federal funds for construction to governmentally owned and voluntary nonprofit private hospitals. See, 42 USCA, § 291 et seq.

1973), a case virtually identical to the present appeal, the plaintiff brought suit against a private hospital claiming a denial of due process following the suspension of his medical staff privileges. Despite the fact that the hospital was receiving funds under Hill-Burton, Medicare, Medicaid, and state programs, the court refused to find state action, holding instead that before Federal jurisdiction could be invoked there had to be a showing that the state was directly involved in the actions taken to discharge the plaintiff. See, also, Greco v. Orange Memorial Hospital Corp. 513 F. 2d 873 (5 Cir.), certiorari denied, 423 U. S. 1000, 96 S. Ct. 433, 46 L. ed. 2d 376 (1975); Mulvihill v. Julia L. Butterfield Memorial Hospital, 329 F. Supp. 1020 (S. D. N. Y. 1971).

With these principles in mind, we have little difficulty in concluding on this record that no state action whatsoever existed with respect to the activities of the Duluth Surgical Board of Recommendations. The board's sole function is to serve Duluth area hospitals in an advisory capacity, and it has no power to implement its recommendations. Neither is this board regulated or funded by either the state or Federal government, and the determination of fitness to practice surgery is not in any sense a governmental responsibility.

Less clear is the status of St. Mary's Hospital. Unlike any of the preceding cases which decided the question of state action after a thorough factual analysis, we are hampered by a record totally devoid of any facts which would tend to show the degree of entanglement, if any, between the hospital and either the state or Federal government.[5] Since it would be mere conjecture for us to presuppose that such an entanglement existed, we review the revocation of plaintiff's privileges apart from any constitutional considerations. This restriction on judicial review in the

---

[5] It is unnecessary for us to decide the state action implications of L. 1976, c. 325, which was enacted after plaintiff instituted the present case. This statute generally requires each hospital to file an annual report on the operation of its complaint or grievance mechanism with the office of health complaints in the Department of Health.

present case, however, has no effect on the outcome, for under the terms of both the operational principles of the Duluth Surgical Board and the medical staff bylaws of St. Mary's Hospital, plaintiff was in our opinion afforded all of the due process rights he could otherwise have claimed under either the Fourteenth Amendment or Minn. Const. art. 1, § 7.[6]

There is little need to consider in detail plaintiff's allegation of unfair treatment by the Duluth Surgical Board of Recommendations. After the board recommended that plaintiff's surgical privileges be totally rescinded by Duluth area hospitals, plaintiff elected not to appeal this adverse decision, as he was entitled to do under the board's operational principles. Having failed to exhaust his procedural remedies, he cannot now complain that his treatment was unjust. See, Suckle v. Madison General Hospital, 499 F. 2d 1364 (7 Cir. 1974).

Nor has plaintiff made a meaningful argument that St. Mary's Hospital breached its contract by failing to consider his case in a manner commensurate with its bylaws, to which he agreed to be bound when he was appointed to the medical staff and thereby granted surgical privileges. Acting upon the recommendation of the Duluth Surgical Board of Recommendations, the administrator first exercised her authority under Art. IV, § 2, and restricted plaintiff's privileges to practicing surgery only in the presence of a sponsor. It was only after this sponsorship arrangement failed that a special investigating committee was appointed under Art. IV, § 1, to review plaintiff's surgical practice in detail. The fact that some members of the investigating committee were also members of the Duluth Surgical Board of Recom-

---

[6] In those cases which have held that a doctor is entitled to due process of law under the Fourteenth Amendment, courts have not required hospitals to conduct a full-blown judicial trial prior to revocation of staff privileges. Rather, courts have looked to whether the doctor received reasonable notice of the charges against him and if he had an opportunity to be heard before a panel of fairminded doctors. See, Klinge v. Lutheran Charities Assn. of St. Louis, 523 F. 2d 56 (8 Cir. 1975); Woodbury v. McKinnon, 447 F. 2d 839 (5 Cir. 1971).

mendations was not a violation of the medical staff bylaws and did not necessarily deny plaintiff a fair consideration of the evidence. Cf. Withrow v. Larkin, 421 U. S. 35, 95 S. Ct. 1456, 43 L. ed. 2d 712 (1975). When this investigation revealed numerous surgical deficiencies, plaintiff was properly notified that he had a right to a hearing before a special ad hoc committee appointed by the executive committee of the medical staff pursuant to Art. V, § 1. Plaintiff requested such a hearing and was given the opportunity to review both the written findings of the investigating committee and the specific case histories that had been criticized in advance. Thereafter, plaintiff appeared at the hearing fully represented by counsel and was permitted to introduce testimony from his own expert witness. The bylaws did not require the hospital to accommodate plaintiff's repeated requests for a review of his case by a panel of doctors completely independent of St. Mary's. See, also, Duffield v. Charleston Area Medical Center, Inc. 503 F. 2d 512 (4 Cir. 1974). Finally, under Art. V, § 3, plaintiff was permitted to appeal the adverse recommendation of the executive committee to the medical staff committee of the board of trustees and was given the opportunity of presenting his case with the assistance of counsel. We therefore hold that under the bylaws plaintiff was afforded a full measure of his contractual due process rights at every stage of the proceedings to revoke his surgical privileges at St. Mary's Hospital and that the trial judge was fully justified in awarding this defendant summary judgment.

As must be conceded by all parties, plaintiff's remaining causes of action asserted against the individual members of the review boards at St. Mary's Hospital and the Duluth Surgical Board of Recommendations for interference with business relationships, defamation, and conspiracy cannot stand in the absence of legal malice. This is so because of the legislatively granted immunity to members or employees of medical review organizations provided by Minn. St. 145.63, which provides in part:

"No person who is a member or employee of, who acts in an advisory capacity to or who furnishes counsel or services to, a review organization shall be liable for damages or other relief in any action brought by a person or persons whose activities have been or are being scrutinized or reviewed by a review organization, by reason of the performance by him of any duty, function or activity of such review organization, *unless the performance of such duty, function or activity was motivated by malice toward the person affected thereby.*" (Italics supplied.)

The clear import of this statute is to encourage the medical profession to police its own activities with a minimum of judicial interference. And the wisdom of this legislative policy is obvious. Our ignorance of such multisyllabic terms found in the present record as "parathyroidectomy" and "aneurysmectomy" is no less than that shared by the general public. Simply stated, courts are ill-equipped to pass judgment on the specialized expertise required of a physician, particularly when such a decision is likely to have a direct impact on human life.

To preserve his right to trial, an adverse party to a motion for summary judgment "may not rest upon the mere averments or denials of his pleading but must present specific facts showing that there is a genuine issue for trial." Rule 56.05, Rules of Civil Procedure; Fownes v. Hubbard Broadcasting, Inc. 302 Minn. 471, 225 N. W. 2d 534 (1975); Rosvall v. Provost, 279 Minn. 119, 155 N. W. 2d 900 (1968). We are unconvinced from a review of plaintiff's affidavits and the evidence most favorable to his claims that his broad allegations of malice are anything more than unsubstantiated speculation as to the reasons for the revocation of his surgical privileges. The immunity provisions of Minn. St. 145.63 were therefore fully applicable with respect to the proceedings held by both the review boards at St. Mary's Hospital and the Duluth Surgical Board of Recommendations, and the trial court properly awarded these defendants summary judgment. Finally, since there is nothing in the record to suggest that

plaintiff's termination by the Duluth Clinic was either unlawful or accomplished by unlawful means, his allegation that this defendant engaged in a conspiracy is without merit.

Affirmed.

MR. JUSTICE YETKA took no part in the consideration or decision of this case.

APPENDIX
BYLAWS, RULES AND REGULATIONS
OF THE MEDICAL STAFF
ST. MARY'S HOSPITAL
DULUTH, MINNESOTA
1974
PREAMBLE

Recognizing that the medical staff is responsible for the quality of medical care in the hospital and must accept and assume this responsibility, subject to the ultimate authority of the hospital governing body, and further recognizing that the cooperative efforts of the medical staff, the administrator and the governing body are necessary to fulfill the hospital's obligation to its patients, the physicians and dentists practicing in St. Mary's Hospital, Duluth, Minnesota, hereby organize themselves in conformity with the Bylaws, Rules and Regulations hereinafter stated.

\* \* \* \* \*

ARTICLE IV
CORRECTIVE ACTION

Section 1. Procedure

(a) Whenever the activities or professional conduct of any member of the staff shall be considered to be lower than the standard of the hospital or the medical staff or to be disruptive to the operations of the hospital, the chief of the department or section involved, the chief or vice-chief of staff, the administrator or the governing body may request in writing, making specific reference to the activity or conduct involved, corrective action.

(b) Such request shall be addressed to the Executive Com-

mittee of the staff, and if the corrective action could result in a reduction or suspension of staff privileges, the matter shall be referred to the chief of the department or section involved, who shall within three (3) days appoint a committee to investigate the matter. The committee shall grant an interview to the staff member against whom corrective action is requested, and within ten (10) days of the appointment of such committee the department or section involved shall make a report to the Executive Committee. The Executive Committee may issue a warning or a letter of reprimand or may impose terms of probation or require consultation or may recommend reduction, suspension or revocation of privileges. If action is contemplated by the Executive Committee which could affect the staff member's privileges, the staff member shall be given an opportunity to appear before the Executive Committee.

(c) Any recommendation of the Executive Committee involving a reduction, suspension or revocation of privileges or suspension or revocation from the medical staff shall be referred to the governing body through the administrator, and the affected staff member shall be entitled to the procedural rights set forth in these Bylaws.

Section 2. Summary Suspension

(a) The administrator, the chief of the medical staff or the chief of each department or section shall have the authority whenever the best interest of patient care in the hospital is concerned, to summarily suspend all or any portion of the privileges of any staff member, which suspension shall become effective immediately upon imposition. A staff member whose privileges have been so suspended shall be entitled to a hearing before the Executive Committee of the medical staff within five (5) days after the imposition of such suspension. The Executive Committee may modify, continue or terminate the suspension and if said hearing does not result in termination, the staff member involved shall be entitled to review by the governing body.

(b) The chief of staff or the chief of the department or sec-

tion shall provide alternate coverage for the staff member's patients being treated within the area of privileges covered by the suspension who are still in the hospital at the time of the suspension.

## ARTICLE V
### HEARING AND REVIEW PROCEDURE

Section 1.  Right to Hearing

(a)  When any staff member or applicant is advised of a recommendation by the Executive Committee that would or could, if approved by the governing body, affect his appointment or reappointment to the medical staff, his status as a member of the medical staff or his hospital privileges, he shall be entitled to a hearing before a committee. If the Executive Committee, following such hearing, continues a recommendation adverse to the practitioner, he shall then be entitled to a review by the governing body before final decision of the governing body.

Section 2.  Request for Hearing

(a)  The administrator shall give prompt written notice to any staff member or applicant of an adverse recommendation or decision who is entitled to a hearing. Failure by the practitioner to request a hearing in writing within five (5) days after receipt of such notice shall be deemed a waiver of the right to any hearing or appellate review. Within five (5) days after receipt of a written request for a hearing, the chief of staff shall appoint a committee of not less than three (3) members of the active medical staff, designating one as chairman and said committee shall schedule a hearing within ten (10) days after the date of receipt of the request for hearing, and the administrator shall promptly advise the practitioner involved in writing of the date of such hearing. The notice of date of hearing shall also state in concise language the acts or omissions with which the practitioner is charged or the grounds of any adverse recommendation.

(b)  The hearing need not be conducted according to rules of law and any relevant matter shall be considered. The com-

mittee shall make a written record of the hearing. Failure of the practitioner involved to appear for said hearing shall be deemed a waiver of all rights to a hearing or further review.

(c)   Within five (5) days after conclusion of the hearing, the committee shall make a written report and recommendation and shall forward the same to the chief of staff. Upon receipt thereof the chief of staff shall convene the Executive Committee which may modify, confirm or reject the original adverse recommendation and shall forward its recommendation to the governing body through the administrator.

Section 3.   Appeal to the Governing Body

(a)   Within five (5) days after receipt of notice of an adverse recommendation or decision made or confirmed after a hearing as hereinbefore provided, the affected practitioner may in writing request review thereof by the governing body. If such review is not requested within said five (5) day period, the practitioner shall be deemed to have waived all rights to review and to have accepted such adverse recommendation or decision.

(b)   Within fifteen (15) days after receipt of such notice of request for review, the Medical Staff Committee of the governing body shall schedule a date for review which shall not be more than five (5) days thereafter and shall advise the practitioner involved of the time and place thereof. The affected practitioner will be required to submit his views in writing to the Medical Staff Committee and shall be given an opportunity to appear before the committee. The Medical Staff Committee shall review the written recommendation of the Executive Committee and may review the pertinent files, records, documents or evidence involved. Within ten (10) days after the date of such review, the Medical Staff Committee shall make its recommendation to the governing body to affirm, modify or reverse the recommendation of the Executive Committee or may recommend referral of the matter back to the Executive Committee of the medical staff for further review and recommendation within fifteen (15) days.

(c)   At its next regular meeting following the conclusion of

the procedures set forth above, the governing body shall make its final decision in the matter and shall, through the administrator, send notice to the Executive Committee and to the affected practitioner. No practitioner shall be entitled a right to more than one hearing and one review on any matter which has been the subject of action by the Executive Committee of the medical staff or by the governing body or by the Medical Staff Committee of the governing body.

(d) The governing body may itself initiate such hearing procedure and review and the same shall take the form of reference to the Executive Committee of the medical staff, and the procedure for hearing and review set forth herein shall be followed.

Section 4. Notices

(a) When any notice of hearing or request for review in writing is required by these Bylaws, the same shall be sent by certified mail, return receipt requested.