**Michael A. AMARAL, et al., petitioners, Appellants,**

v.

**The SAINT CLOUD HOSPITAL, Respondent.**

No. CX–98–784.

Supreme Court of Minnesota.

Aug. 12, 1999.

Mary R. Vasaly, Richard A. Kempf, Susan E. Oliphant, Maslon Edelman Borman

& Brand, L.L.P., Minneapolis, for appellants.

Kevin J. Hughes, Kevin M. O'Driscoll, Hughes, Mathews & Didier, P.A., St. Cloud, for respondent.

## OPINION

### PAUL H. ANDERSON, Justice.

This case requires us to examine the scope of Minn.Stat. § 145.64, subd. 2 (1998), the provider data exception to the privilege provision of Minnesota's review organizations statute, Minn.Stat. §§ 145.61–.67 (1998). Appellants, Dr. Michael A. Amaral and Dr. Dan E. Miulli, are physicians with staff privileges at respondent, The Saint Cloud Hospital. The two physicians requested information about themselves from certain of the hospital's medical peer review organizations. The hospital refused their request, stating that the information sought was confidential under the privilege provision of the statute, Minn.Stat. § 145.64, subd. 1 (1998). The hospital further asserted that under the provider data exception, the information sought was only discoverable in a court action challenging an adverse determination concerning the physicians' staff privileges or participation status. Both physicians then commenced an action in district court for declaratory and injunctive relief. They sought judgment declaring that they had a right to the requested information and that the hospital violated Minn.Stat. § 145.64, subd. 2. They also sought an injunction enjoining and restraining the hospital from violating the statute or from interfering with their access to the requested information. The hospital moved for summary judgment and the court awarded summary judgment to the hospital based on the plain language of the statute. The court of appeals affirmed, basing its affirmance on the purposes underlying the statute. We affirm.

On April 18, 1997, Dr. Michael A. Amaral and Dr. Dan E. Miulli each sent a letter to The Saint Cloud Hospital requesting records, information, and data relating to themselves from the following of the hospital's medical review organizations: Credentials Committee, Critical Care Committee, Medical Care Review Committee, and Executive Committee. Both physicians practice at the hospital and have staff privileges there; therefore, they are subject to the hospital's peer review process. Citing Minn.Stat. § 145.64, subd. 2, the provider data exception to the review organizations statute, Amaral requested the following information for the time frame of September 1995 to the date of the letters:

Records and documents that refer or relate to reviews, evaluations, grants, denials, or recommendations regarding [my] staff privileges or status;

Minutes of meetings where [I][was] discussed;

Complaints, criticisms, reports, recommendations, requests for review, requests for investigation, or any inquiries directed to [the committee or the committee head or representative] referring or relating to [me]; and

Any records or documents [the committee or the committee head or representative] received, reviewed or considered in reviewing or reaching any decision about [me], [my] staff privileges or status.

Miulli requested the same information regarding himself for the time frame of July 1995 to April 1997. In addition, Miulli requested "any records or documents referring or relating in any way to the grant, suspension, denial, or withdrawal of my staff privilege or opportunity to do stereotactic surgery or procedures."

The hospital responded, citing the privilege provision of the statute, Minn.Stat. § 145.64, subd. 1, and stating that the information the physicians sought could only be obtained through the discovery process and was "only discoverable if the physician has received an adverse determi-

nation and challenges that determination in court." The hospital asserted that, because the physicians had received no adverse determination regarding their privileges or participation status and thus had commenced no legal action based on such an adverse determination, the requested information was privileged and could not be disclosed.

The physicians again wrote to the hospital, requesting that the hospital provide "the authority upon which the hospital's position [was] based." The hospital responded by directing the physicians to the text of the privilege provision. In addition, the hospital attached a letter from its attorney, which stated in essence the same information the hospital had conveyed to the physicians in its previous letter.

Following their receipt of the hospital's second letter, the physicians commenced an action in Stearns County District Court requesting: (1) a declaratory judgment that they had a right to examine the requested information, (2) a declaratory judgment that the hospital had violated the review organizations statute, specifically the provider data exception, and (3) an injunction enjoining and restraining the hospital from further violating the provider data exception. The physicians then served discovery requests on the hospital, seeking the same information they had requested in their April 18 letters. The hospital moved for summary judgment and a protective order. Together with its motion for summary judgment, the hospital submitted all correspondence between the parties up to that point and an affidavit from Dr. Daniel J. Whitlock, the hospital's Vice President of Medical Affairs. In his affidavit, Dr. Whitlock stated that confidentiality of review organization information "is essential to the effective functioning of physician review of physician performance and conduct in the Hospital." He further stated that "[t]he extent to which such review [of review organization information] is available to scrutiny beyond the process itself affects the extent, nature, and effect of that process, in that the desired open, candid, honest, and critical evaluation of physician practice and conduct, as it affects patient care in the [h]ospital, will be adversely affected." The physicians then filed a motion to compel the production of the information sought in their discovery requests.

The district court awarded summary judgment in favor of the hospital. The summary judgment was based on the court's conclusion that the language of the provider data exception was unambiguous. The provider data exception allows limited access to review organization information for "professionals requesting or seeking through discovery data, information, or records relating to their medical staff privileges, membership, or participation status." Minn.Stat. § 145.64, subd. 2. The court concluded that the word "or" as used in the phrase "requesting or seeking through discovery" should be read as "a conjunction of two essentially similar words, 'requests' and 'seeks through discovery.'"

The court went on to conclude that reading the word "or" as disjunctive would not be a reasonable construction of the statute for two reasons. First, citing to a thesaurus, the court determined that the word "'[s]eek' is synonymous with 'request.'" The court also concluded that "discovery is essentially comprised of requests by each party" and that "[t]he rules governing discovery are replete with references to 'requests' in almost every instance." Second, reading the word "or" as disjunctive would be at odds with the policy underlying the privilege provision, which provision grants confidentiality to the proceedings and records of medical review organizations, protecting such information from discovery or introduction into evidence in civil actions against a professional health care provider; see Minn.Stat. § 145.64, subd. 1. The court stated that the privilege provision encourages "free and uninhibited discussion among members of peer review [organizations] without fear of retaliation or of legal

action brought by professionals subject to the peer review process." The court then concluded that this policy "would be defeated if a request by a professional at any time would mandate the turning over of documents that are otherwise protected by [the privilege provision]."

The court of appeals affirmed on different grounds. *See Amaral v. Saint Cloud Hosp.*, 586 N.W.2d 141, 143–44 (Minn.App. 1998). Specifically, the court declined to engage in an analysis of the plain language of the statute, relying instead on legislative intent. *See id.* at 143. In dismissing any plain language analysis, the court stated that "the legislative intent of the statute is clear, even though the language itself is not." *Id.* The court, in examining the legislative intent, relied on two decisions of our court to ascertain the purpose behind the privilege provision—*Kalish v. Mount Sinai Hosp.*, 270 N.W.2d 783 (Minn.1978), and *Campbell v. St. Mary's Hosp.*, 312 Minn. 379, 252 N.W.2d 581 (1977). *See Amaral*, 586 N.W.2d at 143–44. In those cases, we concluded that the statutes providing for confidentiality and immunity for peer review organizations and persons involved in the peer review process reflect a legislative intent both to improve the quality of health care by providing for confidentiality of review organization information and to encourage self-monitoring in the medical profession. *See Kalish*, 270 N.W.2d at 785; *Campbell*, 312 Minn. at 389, 252 N.W.2d at 587. On the basis of our statements in *Kalish* and *Campbell*, the court of appeals concluded that

> [t]he extent to which peer review materials are available to outside sources could well affect the nature and result of the monitoring process. The practice of medicine involves referrals, collegiality, and cooperation. Confidentiality of physician files is essential to ensure the highest quality medical practice. If physicians could access all peer review materials at any time, even without any adverse decision affecting their status or privileges, other physicians may be re-

luctant to participate fully in peer review activities or to make full and candid reports about their colleagues. Without the complete confidentiality protections of the statute, the legislative purpose of the statute would be defeated. Judicial interference with the self-monitoring of medical professionals is inconsistent with *Campbell* * * *.

> * * * *

> In essence, this case involves two competing concerns: [the physicians'] right to view materials relating to them and [the hospital's] right to ensure the highest quality of care. * * * It is the individual right of [the physicians], however, that must give way. *See* Minn. Stat. § 645.17(5) (1996) (presuming that legislature intends to favor public interest over any private interest).

*Amaral*, 586 N.W.2d at 144.

On appeal to our court, the physicians argue that under the plain language of the provider data exception and in accordance with the legislative history and policies underlying that exception, the hospital is required to turn over, upon the physicians' requests, the peer review information they endeavor to obtain. The hospital again maintains that the statute must be read as providing confidentiality to review organizations absent a discovery request made in conjunction with a legal action challenging an adverse determination regarding the physicians' staff privileges or participation status.

■ Our review of an award of summary judgment is limited to determining whether there are any genuine issues of material fact and whether the district court erred in its application of the law. *See Offerdahl v. University of Minn. Hosps. & Clinics*, 426 N.W.2d 425, 427 (Minn.1988). The proper construction of a statute is a question of law that we review de novo. *See Bedow v. Watkins*, 552 N.W.2d 543, 546 (Minn.1996). Thus, we must review whether the district court properly interpreted the scope of the pro-

vider data exception. In so doing, we must determine whether the district court erred in its application of the law and whether any genuine issues of material fact remain. *State by Cooper v. French,* 460 N.W.2d 2, 4 (Minn.1990).

"The object of all interpretation and construction of laws is to ascertain and effectuate the intention of the legislature." Minn.Stat. § 645.16 (1998). When the language of a statute is plain and unambiguous, that plain language must be followed. *See id.* A statute is only ambiguous when the language therein is subject to more than one reasonable interpretation. *Tuma v. Commissioner of Econ. Sec.,* 386 N.W.2d 702, 706 (Minn.1986). When interpreting a statute, we may not disregard the letter of the law under the pretext of pursuing the spirit of the law. *See* Minn. Stat. § 645.16.

Under basic canons of statutory construction, we are to construe words and phrases according to rules of grammar and according to their most natural and obvious usage unless it would be inconsistent with the manifest intent of the legislature. *See* Minn.Stat. § 645.08(1) (1998); *Homart Dev. Co. v. County of Hennepin,* 538 N.W.2d 907, 911 (Minn.1995). "Every law shall be construed, if possible, to give effect to all its provisions." Minn.Stat. § 645.16. Whenever it is possible, no word, phrase, or sentence should be deemed superfluous, void, or insignificant. *See Owens v. Federated Mut. Implement & Hardware Ins.,* 328 N.W.2d 162, 164 (Minn. 1983). We presume that the legislature intended to favor a public interest over a private interest. *See* Minn.Stat. § 645.17(5) (1998).

### The Statute

Minnesota's review organizations statute, enacted in 1971, provides a broad grant of confidentiality for the proceedings and records of medical peer review organizations. The privilege provision of the statute states, in pertinent part:

The proceedings and records of a review organization shall not be subject to discovery or introduction into evidence in any civil action against a professional arising out of the matter or matters which are the subject of consideration by the review organization.

Minn.Stat. § 145.64, subd. 1. A professional is defined as "a person licensed or registered to practice a healing art." Minn. Stat. § 145.61, subd. 2 (1998).

In 1991, the legislature created an exception to the privilege provision, adding what is now the first sentence of the provider data exception. *See* 1991 Minn. Laws ch. 137, § 5 (codified at Minn.Stat. § 145.64, subd. 2 (Supp.1991)). That sentence granted to professionals an exception to the privilege provision, thereby creating for professionals the means to gain access to review organization information regarding their own staff privileges or participation status. *See id.* As written in 1991, the exception provided:

The restrictions in subdivision 1 shall not apply to professionals requesting or seeking through discovery, data, information, or records relating to their medical staff privileges or participation status.

*Id.*

The following year, 1992, the legislature added the word "membership" to the existing language of the provider data exception and also added another sentence to the exception that limited the use of any information disclosed to a professional by a review organization. *See* 1992 Minn. Laws ch. 549, art. 7, § 7. This new version of the provider data exception, which remains unchanged today, reads:

The restrictions in subdivision 1 shall not apply to professionals requesting or seeking through discovery, data, information, or records relating to their medical staff privileges, membership, or participation status. However, any data so disclosed in such proceedings shall not be admissible in any other judicial pro-

ceeding than those brought by the professional to challenge an action relating to the professional's medical staff privileges or participation status.

Minn.Stat. § 145.64, subd. 2.

*Specific Language of the Statute*

The proper interpretation of the provider data exception to the privilege provision of the review organizations statute is at issue in this case. More specifically, we are asked to interpret the phrase "requesting or seeking through discovery" in the first sentence and the phrase "in such proceedings" in the second sentence of the exception. The physicians contend that the district court erred in its interpretation of the statute. They argue that, because the terms "requesting" and "seeking through discovery" are separated by the disjunctive word "or," they refer to two different means by which the physicians are entitled to gain access to the information they endeavor to obtain. The physicians further argue that if the statute is construed to mean that "requesting" and "seeking" each modify the term "through discovery," the word "requesting" would be rendered superfluous.

The hospital argues that the word "or" should be read as a conjunctive connecting two synonymous words and that, therefore, the words "requesting" and "seeking" should be read as both modifying the term "through discovery." Thus, the hospital argues that the provider data exception should be read as granting the physicians access to the information they endeavor to obtain only when they request the information through discovery or seek the information through discovery. The hospital further contends that the phrase "in such proceedings" in the second sentence of the provider data exception clarifies that the legislature intended that more than a mere request is required to obtain review organization information. Accordingly, the hospital maintains that because review organization information may only be disclosed in the discovery process, the exception must be read to mean that the physicians may request or seek the information through discovery only after the hospital has made an adverse ruling concerning their staff privileges or participation status.

Absent context revealing that the word "or" should be read as a conjunctive, we have generally read "or" to be disjunctive. *See, e.g., Berry v. Walker Roofing Co.,* 473 N.W.2d 312, 314–15 (Minn.1991); *Aberle v. Faribault Fire Dept. Relief Ass'n,* 230 Minn. 353, 360, 41 N.W.2d 813, 817 (1950). Reading only the first sentence of the provider data exception, it appears that the word "or" should be read in its general sense—as a disjunctive term. However, while the first sentence standing alone seems fairly clear, when read in the context of the rest of the provider data exception, the intended meaning of "or" becomes more elusive.

Particularly troublesome is the phrase in the second sentence of the provider data exception referring to data disclosed "in such proceedings." This phrase can reasonably be read as implying that the legislature intended that something more than a mere request for information should be required in order to prompt disclosure. However, it could also be argued that the proceedings referred to are the proceedings of the review organization. Ascertaining how the word "proceedings" is used elsewhere in the statute provides little assistance to our inquiry. The word "proceedings" is used in the privilege provision, referring to the proceedings of a review organization, but later, in the provider data exception, it is used to refer to judicial proceedings. The American Heritage Dictionary supports either reading, defining the noun "proceeding" as "a course of action; a procedure" and the noun "proceedings" as "a sequence of events occurring at a particular place or occasion," "a record of business carried on by a society or other organization," and "the instituting or conducting of legal action." American Heritage Dictionary at

1444 (3d ed.1992). Thus, the intended antecedent for the phrase "in such proceedings," like the meaning of the word "or," is not entirely clear.

*Legislative History*

The legislative history of the provider data exception adds little to our search for the intended meaning of the part of the provider data exception with which we are concerned. When the first sentence of the exception was added in 1991, there was no discussion either in committee or on the floor concerning its meaning. In fact, there was no discussion whatsoever regarding this provision.

In 1992, the word "membership" was added to the first sentence and the second sentence was added as well. *See* 1992 Minn. Laws ch. 549, art. 7, § 7. Parts of the 1992 language were introduced at different times during the legislative term. Initially, the word "membership" was not added to the first sentence and the second sentence read, "However, any data so disclosed in such proceedings shall not be admissible in any other judicial proceeding." H.F. 2800, art. 7, 77th Minn. Leg. 1992 (as attached to minutes of Hearing on H.F. 2800, H. Appropriations Comm., Subcomm. on Health and Human Servs., 77th Minn. Leg., Apr. 3, 1992). There was no discussion in committee or on the floor regarding this initial language.

It was in a later amendment that the word "membership" was added to the first sentence and the phrase "than those brought by the professional ·to challenge an action relating to the professional's medical staff privileges or participation status" was added to the second sentence. Amendment 33 to H.F. 2800, 77th Minn. ·Leg.1992 (as attached to minutes of Hearing on H.F. 2800, H. Appropriations Comm., Subcomm. on Health and Human Servs., 77th Minn. Leg., Apr. 3, 1992). The subcommittee discussion concerning the amendment was limited and somewhat contradictory. At the hearing, an individual unidentified by status or affiliation stated that the language in the second sentence was "clarifying language" and that the language was meant to clarify the initially-proposed language by adding that "data disclosed *in discovery* is not admissible in other proceedings, other than those brought to challenge" in court the specified adverse actions by a review organization. Hearing on H.F. 2800, H. Appropriations Comm., Subcomm. on Health and Human Servs., 77th Minn. Leg., Apr. 3, 1992 (audio tape) (Statement of Mr. Chen). This comment implies that the language concerning data disclosed "in such proceedings" was intended to refer to discovery proceedings. However, without more information, it is difficult to use this legislative history to discern with any certainty the intended meaning of the 1992 language.

*Purpose Underlying the Statute*

In the face of statutory language that lacks clarity and a less than illuminating legislative history, we turn for guidance to the purposes underlying the enactment of review organizations statutes in order to determine how the provider data exception fits within those purposes. Nationwide, review organizations statutes have been enacted for the purpose of improving the quality of health care through the use of the medical peer review system. *See Jenkins v. Wu,* 102 Ill.2d 468, 82 Ill.Dec. 382, 468 N.E.2d 1162, 1168 (1984) (stating that the purpose of Illinois' review organizations statute is "to ensure the effectiveness of professional self-evaluation, by members of the medical profession, in the interest of improving the quality of health care" and noting that "the majority of State legislatures have passed legislation in the area of hospital-committee confidentiality"). *See also State ex rel. Chandra v. Sprinkle,* 678 S.W.2d 804, 806–07 (Mo.1984) (en banc); *Franco v. District Ct. In and For the City and County of Denver,* 641 P.2d 922, 928–29 (Colo.1982) (en banc).

The purpose underlying Minnesota's review organizations statute is identical to that of other review organizations statutes.

Two opinions of our court support this conclusion: *Campbell v. St. Mary's Hospital,* 312 Minn. 379, 252 N.W.2d 581 (1977); *Kalish v. Mount Sinai Hospital,* 270 N.W.2d 783 (Minn.1978). Both *Campbell* and *Kalish* were written before 1991, when the provider data exception was made a part of the statutory scheme.

■ We first addressed the purpose underlying the review organizations statute in *Campbell.* There, we held that the district court properly awarded summary judgment to persons involved with the hospital's medical peer review process in the face of a physician's claims of interference with business relationships, defamation, and conspiracy. *Campbell,* 312 Minn. at 380–81, 252 N.W.2d at 583. We stated as to the grant of immunity that:

> The clear import of [the review organizations statute] is to encourage the medical profession to police its own activities with a minimum of judicial interference * * * courts are ill-equipped to pass judgment on the specialized expertise required of a physician, particularly when such a decision is likely to have a direct impact on human life.

*Id.* at 389, 252 N.W.2d at 587. The following year, in *Kalish,* 270 N.W.2d at 783, a medical malpractice case, we stated that the policy and purpose behind Minn.Stat. §§ 145.61–.67 as they relate to health care organizations is that:

> These statutes, and similar statutes in many other states, are designed to serve the strong public interest in improving the quality of health care. The statutes reflect a legislative judgment that improvements in the quality of health care will be fostered by granting certain statutory protections to health care review organizations.

*Id.* at 785 (footnotes omitted). Thus, it is clear, both nationally and in Minnesota, that the purpose underlying review organizations statutes is the strong public interest in improving health care by granting certain statutory protections to medical review organizations.

*Confidentiality*

In pursuit of their goal of improving the quality of health care through the use of the peer review system, state legislatures have recognized that professionals will be reluctant to participate freely in peer review proceedings if full participation includes: (1) the possibility of being compelled to testify against a colleague in a medical malpractice action, and (2) the possibility of being subjected to a defamation suit by another professional. *See Bredice v. Doctors Hosp., Inc.,* 50 F.R.D. 249, 250 (D.D.C.1970), *aff'd without opinion,* 479 F.2d 920 (D.C.Cir.1973) ("Constructive professional criticism cannot occur in an atmosphere of apprehension that one doctor's suggestion will be used as a denunciation of a colleague's conduct in a malpractice suit."); *Holly v. Auld,* 450 So.2d 217, 220 (Fla.1984) ("A doctor questioned by a review committee would reasonably be just as reluctant to make statements, however truthful or justifiable, which might form the basis of a defamation action against him as he would be to proffer opinions which could be used against a colleague in a malpractice suit."). Accordingly, state legislatures have generally granted broad confidentiality privileges to the information and proceedings of peer review organizations in an effort to encourage full participation in the peer review process and foreclose the possibility that a professional might be compelled to testify against a colleague in a malpractice suit or subjected to a defamation suit.

Minnesota's review organizations statute, including the provider data exception, specifically forecloses each of these possibilities. In the privilege provision, the statute specifically states that "the proceedings and records of a review organization shall not be subject to discovery or introduction into evidence in any civil action against a professional arising out of the matter or matters which are the subject of consideration by the review organization." Further, the provider data excep-

tion specifically states that a professional who gains access to review organization information may use that information *only* in a judicial proceeding "to challenge an action relating to the professional's medical staff privileges or participation status." As written, the review organizations statute supports the overarching purpose of the peer review process, improving the quality of patient care through what is essentially a teaching and learning process used to guide the establishment of standards and goals for the provision of improved future health care.

Another reason state legislatures have granted broad confidentiality to review organization information and proceedings involves the nature of the medical profession. We agree with the court of appeals' conclusion that medical professionals rely on collegiality with and referrals from their peers. *See Amaral,* 586 N.W.2d at 144; *see also Jenkins,* 82 Ill.Dec. 382, 468 N.E.2d at 1168. Granting professionals access to review organization information at any time by merely requesting the information might have a chilling effect on the peer review process. *See Claypool v. Mladineo,* 724 So.2d 373, 383 (Miss.1998); *Cruger v. Love,* 599 So.2d 111, 114–15 (Fla. 1992). Specifically, the quality of patient care could be compromised if fellow professionals are reluctant to participate fully in peer review activities by coming forward with candid and honest reports about a colleague because they fear the colleague will use the provider data exception to completely eliminate the confidentiality protections of the review organizations statute. At the same time, professionals are under an ethical responsibility to put patient care ahead of collegiality and the need for referrals. *See American Medical Ass'n Code of Medical Ethics, Statement V,* p. xiv (1997). Thus, the privilege provision strikes a balance between these sometimes conflicting motivations and favors the public interest of patient well-being over the private interest of the physicians' desire to gain access to a review organization's proceedings and information by creating a situation where one professional may speak freely about a colleague's performance without fear of retaliation. *See* Minn.Stat. § 645.17(5). We do not believe that the legislature intended to so fundamentally alter this balance by granting to professionals unfettered access to review organization information.

*Public Interest in Quality Health Care Outweighs Private Right to Access*

■ In the case before us, the two physicians request access to the hospital's review organization information even though the hospital has made no adverse determination concerning the physicians' staff privileges or participation status at the hospital. This request requires us to balance the physicians' private right to access this information against the public interest in quality health care. In so doing, we conclude that, in these circumstances, the physicians' right to the review organization information does not outweigh the public interest in quality health care. The provider data exception was not meant to be used as a tool for individual physicians to penetrate the wall of confidentiality that the legislature has so carefully constructed merely because the physicians are curious about what was said about them.

■ We conclude that the legislature did not intend for the provider data exception to grant professionals access to review organization information absent an adverse determination regarding their staff privileges or participation status. Thus, we conclude as to the first sentence of the provider data exception that in the phrase "requesting or seeking through discovery," the words "requesting" and "seeking" each modify the term "through discovery." As to the second sentence, we conclude that in the clause regarding information disclosed "in such proceedings," the proceedings referred to are discovery proceedings. Accordingly, we hold that the physicians are not entitled to the review organization information they have requested.

Affirmed.

STRINGER, Justice (concurring specially).

I concur with the result of the majority and much of its reasoning as to the strong policy and intent behind Minn.Stat. § 145.64 (1998). I write separately because I believe the statute is clearly unambiguous and that the appellants are not entitled to the information they seek in the absence of legal proceedings challenging an adverse action regarding their medical staff privileges, membership or participation status. The trial court correctly analyzed the statute and appropriately concluded that the phrase "requesting or seeking through discovery" should be read as a unitary reference to efforts to obtain information through discovery in judicial proceedings. Minn.Stat. § 145.64, subd. 2. The reference in the next sentence to admissibility of the information "in any *other* judicial proceeding" gives further support to this conclusion. *See id.* (emphasis added). Applied accordingly, the statute is clear and consistent with the policy to accord confidentiality to medical review organizations, and we need not be concerned with the legislative proceedings or statutory history.

RUSSELL A. ANDERSON, Justice (concurring specially).

I join in the special concurrence of Justice Stringer.