Philip **ROSSO, et al., Appellants,**

v.

**HALLMARK HOMES OF MINNEAPOLIS, INC. d/b/a Hallmark Homes, defendant and third party plaintiff, Respondent,**

v.

**J.C. Markfort Builders, Inc., et al., Third Party Defendants.**

No. A13–1304.

Court of Appeals of Minnesota.

March 10, 2014.

J. Scott Andresen, Mark R. Bradford, Bassford Remele, P.A., Minneapolis, Minnesota (for appellants).

Louise A. Behrendt, Garth J. Unke, Stich, Angell, Kreidler, Dodge & Unke, P.A., Minneapolis, Minnesota (for respondent).

Considered and decided by HOOTEN, Presiding Judge; HUDSON, Judge; and MINGE, Judge.

## OPINION

MINGE, Judge.[*]

Appellant homeowners experienced moisture problems with their home and sued the builder on various theories. The district court dismissed their action, determining that the ten-year limitation on commencing claims had run. Minn.Stat. § 541.051, subd. 1(a). Because we conclude there can be "substantial completion" of construction before the issuance of a municipal certificate of occupancy, we affirm the district court. We further conclude equitable tolling is not a basis for reversing the district court's disposition.

## FACTS

The facts bearing on this decision are not in dispute. Appellants Philip and Linda Rosso are owners of a home in the City of Chaska that was built by respondent Hallmark Homes of Minneapolis, Inc. d/b/a Hallmark Homes ("Hallmark") in the spring of 1995.[1] Hallmark decorated, furnished, and used the home as a model home until November 14, 1995, when it entered into a purchase agreement with the Rossos, as the initial purchasers. The parties agree that at that time, the home was in "move-in condition," and on November 16, 1995, the Rossos signed a "Seller's Property Disclosure Statement," affirming that the home and its fixtures were in working order. Hallmark did not obtain a certificate of occupancy for the home from Chaska[2] until January 19, 1996, one day before the closing of the Rossos' purchase of the home. Hallmark claims that it did not seek the certificate of occupancy before 1996 for tax reasons.

On November 20, 2005, the Rossos discovered damage to their sliding doors where the sills appeared to be rotting. They hired a firm to perform an inspection, which disclosed the intrusion of moisture and water. On May 23, 2006, the Rossos notified Hallmark about these problems, requesting that it resolve them. When the issues were not resolved, the Rossos hired legal counsel.

In 2007, with the aim of resolving the matter without litigation, the parties entered into an agreement to toll any applicable statutes of limitation, repose, or other defenses as of September 19, 2006. The agreement specifically excluded defenses based on time limitations that were available prior to September 19, 2006. When the parties were unable to resolve the matter, the Rossos filed suit, alleging breach of Minn.Stat. § 327A.02 (2010) (statutory warranty) and negligence. The

---

[*] Retired judge of the Minnesota Court of Appeals, serving by appointment pursuant to Minn. Const. art. VI, § 10.

1. Hallmark contends that the home's construction was completed in the summer, but in any event, it was completed no later than November 14, 1995.

2. In 1995, the Minnesota State Building Code gave municipalities the option of requiring certificates of occupancy before a person may legally reside in a home. Minn. R. 1305.0109 (1995). Chaska elected to require certificates of occupancy at that time. The Code has since been amended and requires that municipalities issue certificates of occupancy for homes. Minn. R. 1300.0220 (2007).

Rossos later withdrew their statutory-warranty claim.

Hallmark moved for summary judgment, claiming that the Rossos' claims are barred by the ten-year statute of repose contained in Minn.Stat. § 541.051, subd. 1(a), which provides in relevant part:

[N]o action by any person in contract, tort, or otherwise to recover damages for any injury to property, real or personal ... arising out of the defective and unsafe condition of an improvement to real property, shall be brought against any person performing or furnishing the design, planning, supervision, materials, or observation of construction or construction of the improvement to real property or against the owner of the real property more than two years after discovery of the injury, nor in any event shall such a cause of action accrue more than ten years after substantial completion of the construction. Date of substantial completion shall be determined by the date when construction is sufficiently completed so that the owner or the owner's representative can occupy or use the improvement for the intended purpose.

Because the home's construction was substantially completed by November 14, 1995, when the Rossos signed the purchase agreement, or by November 16, 1995, when the Rossos signed the Seller's Disclosure Statement, and the Rossos did not discover damage to their home until November 20, 2005,[3] the district court granted Hallmark's motion for summary judgment. This appeal followed.

**3.** The parties' briefs do not mention, but we note that the Rossos' action was not dismissed as untimely because the parties' tolling agreement operated to suspend the limitations period that would otherwise have required the Rossos to file suit within two years of discovering water damage to their home on November 20, 2005. Minn.Stat.

## ISSUES

I. Did the district court err when it held that the Rossos' home was substantially completed before a certificate of occupancy had been issued?

II. If not, was the ten-year statute of repose equitably tolled?

## ANALYSIS

The district court properly grants summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits ... show that there is no genuine issue as to any material fact and that either party is entitled to a judgment as a matter of law." Minn. R. Civ. P. 56.03. "When the material facts are not in dispute, we review the lower court's application of the law de novo." *In re Collier,* 726 N.W.2d 799, 803 (Minn.2007). "No deference is given to a lower court on questions of law." *Modrow v. JP Foodservice, Inc.,* 656 N.W.2d 389, 393 (Minn.2003). "[T]he construction and applicability of a statute of limitations or repose is a question of law subject to de novo review." *State Farm Fire & Cas. v. Aquila Inc.,* 718 N.W.2d 879, 883 (Minn.2006).

I. **"Substantial completion" contemplates the structure's physical construction and not the issuing of a certificate of occupancy.**

■ The issue on appeal, one of first

§ 541.015, subd. 2 (2012) (providing that if a cause of action accrues during the ninth or tenth year after substantial completion of construction, an action to recover damages may be brought within two years after the date of accrual but not twelve years after substantial completion).

impression in Minnesota,[4] hinges on the interpretation of the phrase "substantial completion." That phrase is used and defined in Minn.Stat. § 541.051, subd. 1(a), to determine the event triggering commencement of the ten-year statute of repose. *See Weston v. McWilliams & Assocs., Inc.,* 716 N.W.2d 634, 637 (Minn.2006) (accepting as an undisputed fact that construction was substantially completed when the certificate of occupancy was issued). "A statute should be interpreted, whenever possible, to give effect to all of its provisions; 'no word, phrase, or sentence should be deemed superfluous, void, or insignificant.'" *Am. Family Ins. Grp. v. Schroedl,* 616 N.W.2d 273, 277 (Minn.2000) (quoting *Amaral v. St. Cloud Hosp.,* 598 N.W.2d 379, 384 (Minn.1999)). "We are to read and construe a statute as a whole and must interpret each section in light of the surrounding sections to avoid conflicting interpretations." *Id.* "We construe statutes to effect their essential purpose but will not disregard a statute's clear language to pursue the spirit of the law." *Lee v. Fresenius Med. Care, Inc.,* 741 N.W.2d 117, 123 (Minn.2007).

The Rossos argue that, because the city required a certificate of occupancy as a condition to occupy the home legally, the home's construction was not substantially completed until the certificate was issued on January 19, 1996, and their claims fall within the ten-year statute of repose. *See Nolan v. Paramount Homes, Inc.,* 135 N.C.App. 73, 518 S.E.2d 789, 791 (1999) (interpreting a similar statute that defined "substantial completion" as the "degree of completion of a project, improvement or specified area or portion thereof upon attainment of which the owner can use the same for the purpose for which it was intended" and holding that the home was not substantially completed until a "certificate of compliance" was issued). Accordingly, the Rossos contend that, because they could not legally occupy the home until the certificate was issued, they could not "occupy or use the improvement for the intended purpose." Minn.Stat. § 541.051, subd. 1(a). But this reading of Minn.Stat. § 541.051, subd. 1(a), ignores the use of the word "construction" in the statute.

■ The date of substantial completion is defined as "the date when *construction is sufficiently completed so that* the owner or the owner's representative can occupy or use the improvement for the intended purpose." Minn.Stat. § 541.051, subd. 1(a) (emphasis added). No word or phrase of statutory language should be deemed superfluous or insignificant. *Amaral,* 598 N.W.2d at 384. Accordingly, the phrase "construction is sufficiently completed so that," specifically contemplates the extent to which the structure's physical condition nears completion so that it may be used for the intended purpose as the appropriate inquiry for determining the date of substantial completion. Minn.Stat. § 541.051, subd. 1(a). The statute does not make the date turn on the legality of the owner's occupancy or use of that structure. While a certificate of occupancy may serve as prima facie evidence of substantial completion because a certificate of occupancy would never be issued before a structure's construction were completed, it is not a *necessary* condition that has to occur before *substantial* completion of a home is achieved under Minn.Stat. § 541.051, subd. 1(a). In this case, the date of substantial completion was, at a minimum, November 14, 1995, when the

---

4. The district court, in inviting the Rossos to appeal without the need to incur the expense of further discovery and trial, noted that "this direct question has not ... been directly addressed by the appellate courts in the State of Minnesota."

home was "move-in ready" or, at the latest, November 16, 1995, the date the Rossos signed the Seller's Property Disclosure Statement, affirming that the home and its fixtures were in working order. Either date is more than ten years before November 20, 2005, the date on which the Rossos discovered water damage to their home.

The Rossos argue that our interpretation creates a situation where the "home could be metaphysically occupied before it could be legally occupied," requiring a fact-specific inquiry into the degree of completion of a structure's construction in every case. The Rossos contend that, as a result, our holding will lead to uncertainty in the law and undermine the public policy served by requiring a certificate of occupancy. But our holding is based on the plain language of Minn.Stat. § 541.051, subd. 1(a), which specifically focuses on the extent to which a structure has been built as the measuring stick for whether the owner may use or occupy the structure for its intended purpose, not on the owner's *legal* right to use or occupy that structure for its intended purpose. While we recognize and acknowledge that our holding may create critical factual questions as to the degree to which a structure's physical construction must have progressed to reach "substantial completion," we decline to establish a bright-line rule that a structure that is 75%, 85%, or 95% complete has

met this threshold. The statutory language directs that such cases necessarily involve fact-specific inquiries. Difficulties presented by these factual questions are inherent in many areas of law and within the legislature's purview to address.

## II. The ten-year statute of repose is not equitably tolled.

The Rossos argue, in the alternative that, even if "substantial completion" under Minn.Stat. § 541.051 does not hinge on the issuance of the certificate of occupancy, Minn.Stat. § 541.15 (2012), which tolls the statute of limitations for certain disabilities, should guide this court to conclude that the statute of repose was equitably tolled until January 19, 1996, the date on which the certificate was issued.[5]

Initially, we note that Minn.Stat. § 541.15 suspends periods of limitation incident to certain claims of disability. None of these disability circumstances is present in the Rossos' case.[6] In itself, not qualifying as a real party in interest until the issuance of the certificate of occupancy does not constitute a "disability" that would stay "the beginning of the action ... by injunction or by statutory prohibition." Minn.Stat. § 541.15(a)(4). The Rossos were neither enjoined nor restricted by statute from bringing their negligence

---

5. Hallmark argues that because this issue was not addressed by the district court, we should not address it on appeal. The Rossos' equitable-tolling argument, however, was argued before the district court. In the interests of justice, we address it on appeal. *Johnson v. Mut. Serv. Cas. Ins. Co.*, 732 N.W.2d 340, 343 (Minn.App.2007) (addressing statute-of-limitations issue that was argued to but not addressed by the district court in the interest of justice and judicial economy), *review denied* (Minn. Aug. 21, 2007).

6. In their opposition to summary judgment before the district court, the Rossos argued

that they were not a "real party in interest" prior to January 19, 1996, when the certificate of occupancy was issued, Minn. R. Civ. P. 17.01 (providing that "[e]very action shall be prosecuted in the name of the real party in interest"), and they did not have a "legal right to bring the claim under the applicable substantive law." *Austin v. Austin*, 481 N.W.2d 884, 886 (Minn.App.1992). On appeal, the Rossos simply assert that "[they] (or any other party) would have been legally unable to bring a lawsuit against Hallmark related to the home until a certificate of occupancy was issued, which is the first date it could be legally occupied."

claim. Although "a court may supplement statutes with equitable principles," *LaFreniere–Nietz v. Nietz,* 547 N.W.2d 895, 898 (Minn.App.1996), the plain language of Minn.Stat. § 541.15 is not a basis for generally suspending the period of limitations in the interests of equity.

The Rossos contend that the district court's decision creates an unfair limitation. They argue that because a certificate of occupancy had not been issued until January 19, 1996, they could not legally occupy the home and "would have been legally unable to bring a lawsuit against Hallmark related to the home" until that date. But the Rossos cite neither statutory nor caselaw in support of this claim that they should have a full ten years to sue. In fact, they had more than nine years of occupancy before the time for making claims expired. Nine years is hardly a short period, constituting a compelling basis for equitable relief.

And even if principles of equity may be invoked, they are an awkward fit with the statute of repose in this case. The legislature enacted Minn.Stat. § 541.015 with the legitimate objective of "avoid[ing] litigation and stale claims which could occur many years after an improvement to real property has been designed, manufactured and installed," and to equitably toll the statute would undermine this objective. *Sartori v. Harnischfeger Corp.,* 432 N.W.2d 448, 454 (Minn. 1988). The statute promotes equity by avoiding stale claims. Here, the Rossos did not discover water damage to their home until November 20, 2005, after the statute of repose had run. Their equitable claim is not available, and the district court did not err in granting Hallmark summary judgment.

## DECISION

"Substantial completion," as used and defined in Minn.Stat. § 541.051, subd. 1(a), to determine the event triggering commencement of the ten-year statute of repose for claims arising out of improvements to real property, contemplates the extent to which a structure has been physically constructed so that the owner may use or occupy the structure for its intended purpose, not whether a certificate of occupancy has been issued. Because the Rossos discovered damage to their home more than ten years after substantial completion of their home, their claims are barred. Furthermore, the ten-year statute of repose is not equitably tolled.

**Affirmed.**