## MARY AND MIKE VALENCIA v. MARKHAM CO-OPERATIVE ASSOCIATION AND ANOTHER.[1]

May 2, 1941.

Nos. 32,655, 32,656.

[1]Reported in 297 N. W. 736.

*Ina D. Anderson,* for appellants.

*Hunt, Palmer & Hood* and *Robert K. McCarthy,* for respondents.

GALLAGHER, CHIEF JUSTICE.

These appeals involve two cases, tried together, in which verdicts were returned for defendants. The actions arose out of a collision which occurred in the city of Duluth on August 10, 1935, between an automobile owned by plaintiff Mike Valencia and driven by plaintiff Mary Valencia, wife of Mike, and a truck owned by defendant Markham Co-operative Association and driven by defendant Ed Nevanen, its employe. As the appeals must stand or fall together, we will confine this opinion to the facts as they appear in the Mary Valencia action.

The case was tried in May, 1938. A motion for a new trial, made on the minutes of the court, was denied September 20, 1938. Thereafter, plaintiff, by other counsel, moved for a new trial, basing her motion on various grounds, including newly discovered evidence and accident and surprise. Before this motion was submitted she moved for an extension of time in which to obtain a settled case. Both motions were denied, and judgment was entered for defendants on July 5, 1939. Thereafter plaintiff appealed to this court from the judgment. On September 6, 1939, we denied a writ of *mandamus* to require the trial court to grant an extension of time in which to permit plaintiff to procure a settled case. On December 28, 1939, we affirmed the district court judgment and remittitur issued on January 2, 1940.

On January 4, 1940, plaintiff, through her present counsel, procured an order to show cause why the district court judgment should not be vacated and a new trial granted. Her application was based on (1) material evidence, newly discovered, which could not with reasonable diligence have been discovered and produced

at the trial; (2) accident and surprise which could not have been prevented by ordinary prudence; and (3) a claim that the ends of justice required a new trial to be granted.

The order to show cause recited that it was issued on certain affidavits attached thereto and on all of the records, files, and proceedings in the case, including a complete transcript of the testimony taken at the trial. It was discharged on June 24, 1940, the effect thereof being to deny plaintiff's third motion for a new trial.

All issues concerning the sufficiency of the evidence to sustain the verdict, the correctness of the instructions to the jury, the conduct of counsel, and the existence of errors occurring at the trial have been determined by the order of this court affirming the judgment of the lower court.

The sole question presented is: Did the trial court abuse its discretion in denying plaintiff's last application for a new trial? Ordinarily, in the determination of that question we would be confined to the affidavits presented on the motion, where, as here, there is no settled case. No objection being raised at the hearing on the motion, defendants appearing generally and presenting counteraffidavits, the trial court must have considered the point waived. We will consider it in the same light. Twaddle v. Mendenhall, 80 Minn. 177, 83 N. W. 135.

The collision here involved occurred at the intersection of Fourteenth avenue east with Jefferson street. Plaintiff was traveling in a northerly direction on Fourteenth avenue east, and defendant Nevanen was proceeding in a westerly direction on Jefferson street. There were no traffic controls at the intersection. There was conflict in the evidence as to whether plaintiff stopped before she entered the intersection, her testimony being that she came to a full stop, looked to the right and then to the left, and seeing no cars in view proceeded in second gear to cross Jefferson street. To her right were several obstructions to her view. She testified that after coming to a stop the street was clear of such obstructions to the extent that she could see 200 feet to the east. She testified

that she did not see defendant's truck until she had proceeded into the intersection; that the truck, at that time only 20 to 30 feet from her, appeared to be turning to its left to go south on Fourteenth avenue; that she became frightened and stepped on the accelerator to "get away"; that the truck then turned northward and struck her car. The truck continued down Jefferson street, jumped the curb, and ran down an embankment into a building.

In support of her motion for a new trial, plaintiff presented several affidavits allegedly containing newly discovered evidence which could not with reasonable diligence have been discovered and procured at the trial. Chief among these are the affidavits of Mrs. Rae Gustafson, Mr. Kenneth Lindstrom, Mr. Clifford Johnson, and Mr. Henry Maki, together with those of several eye specialists. Mrs. Gustafson, who is the only disinterested person who actually saw the accident, states that Mrs. Valencia stopped before entering the intersection and that defendant's truck, traveling at a terrific rate of speed, struck her car. Mr. Lindstrom heard the crash and saw the truck jump the curbing and run down the embankment. He talked to Nevanen directly after the accident and states in his affidavit that Nevanen admitted he was at fault and that he had no brakes. Mr. Johnson also heard Nevanen admit liability. Mr. Maki states that, after viewing certain notes taken by an attorney who represented him in a claim for injuries suffered by him from the accident, his memory was refreshed and that he now recalls that the truck ran into the front right fender, running board, and bumper of the Valencia car. His affidavit differs in some respects from his testimony at the trial. All of these people save Maki gave as reason for their failure to offer this knowledge to anyone the fact that they were under the impression that the insurance company had made a settlement with Mrs. Valencia. Mrs. Gustafson and Mr. Lindstrom moved from the vicinity some time later.

We have said in numerous cases that the granting of a new trial on the ground of newly discovered evidence rests largely in the discretion of the trial court, which, having heard the testimony

and having knowledge of what transpired at the trial, is in a better position than we to determine whether or not a new trial should be granted. Consequently, this court will not reverse the trial court unless there has been a manifest abuse of discretion, the presumption being that the discretion was properly exercised. Lampsen v. Brander, 28 Minn. 526, 11 N. W. 94; 5 Dunnell, Minn. Dig. (2 ed. & Supps.) § 7125. Our inquiry is not whether, upon the record, the trial court might have properly granted a new trial, but whether the refusal of it involved the violation of a clear legal right or a manifest abuse of judicial discretion. Merek v. S. J. Groves & Sons Co. 200 Minn. 418, 274 N. W. 402; Stock v. Fryberger, 197 Minn. 399, 267 N. W. 368; Jorstad v. Benefit Assn. of Ry. Employees, 196 Minn. 568, 265 N. W. 814; Kubat v. Zika, 193 Minn. 522, 259 N. W. 1. It is the function of the trial court to determine whether such newly discovered evidence would be liable to affect the result of another trial. Merek v. S. J. Groves & Sons Co. *supra.*

Although the affidavits contain some material evidence, we cannot say that the trial judge abused his discretion. The evidence is for the most part contradictory and impeaching of defendants'. Nor have plaintiffs shown affirmatively and unequivocally that such evidence could not have been discovered before trial. We think there was a failure to exercise reasonable diligence. See Krahn v. J. L. Owens Co. 136 Minn. 53, 161 N. W. 257; *Id.* 138 Minn. 374, 165 N. W. 129; Merek v. S. J. Groves & Sons Co. 200 Minn. 418, 274 N. W. 402. Mrs. Gustafson was a neighbor of the Valencias, was in the habit of purchasing groceries at their store, and did not move from the neighborhood until over a year and a half after the accident and several months after the action was commenced. Mr. Lindstrom's photograph of defendant's truck was used by plaintiffs in evidence, and he was known by Mrs. Valencia's daughter, who obtained the picture from him. Mr. Johnson was a friend of the family and was easily available. We think the trial court was better able than we to decide as to the credibility of Mr. Maki's statement with respect to his refreshed memory.

■ Appellants claim accident and surprise at the testimony of Dr. Athens, an eye specialist called by defendants, who testified that he had found "blind spots" in Mrs. Valencia's vision and that in certain positions of the eye she could not see an approaching automobile at a distance of 40 feet. Plaintiffs, if surprised, should not proceed with the trial and speculate on the chances of a favorable verdict. 5 Dunnell, Minn. Dig. (2 ed.) § 7119. Affidavits of several eye specialists are now presented by plaintiffs showing that such "blind spots" did not disturb Mrs. Valencia's vision and that she could readily see approaching cars for a distance of several blocks. The trial court could better determine the effect of Dr. Athen's testimony on the jury's verdict and whether or not these affidavits contain evidence which would change the result. There is no clear abuse of discretion shown. 5 Dunnell, Minn. Dig. (2 ed. & Supps.) §§ 7117, 7118.

Appellants urge that the ends of justice require that a new trial be granted. This is not a statutory ground for a new trial though it appears that in a few cases the court has used this phrase in granting one. Several New York decisions have been cited stating that the court possesses the inherent power to grant a new trial where the ends of justice require it, even though a technical compliance with the rules governing admissibility of newly discovered evidence be not shown. Blood v. Colby, 236 App. Div. 537, 260 N. Y. S. 233; Hyman v. Dworsky, 239 App. Div. 413, 267 N. Y. S. 539. We have been cited to a few cases decided by this court wherein the court felt constrained to allow a new trial in the interests of justice. These were exceptional cases, and the newly discovered evidence was of such a nature as to require a different verdict. In re Guardianship of Wood, 140 Minn. 130, 167 N. W. 358; State v. Myers, 154 Minn. 242, 191 N. W. 597. In Geisler v. Geisler, 160 Minn. 463, 200 N. W. 742, the court apparently based its decision on the fact that the newly discovered evidence was admissible.

Although we feel, as did the trial court, that the jury might well have returned a different verdict, where the evidence is as con-

flicting as it is here, we cannot invade the right of the jury to decide facts. Nor can we say that the character of the newly discovered evidence would require a different result.

Orders affirmed.

