CARL ABERLE AND OTHERS v. FARIBAULT FIRE DE-
PARTMENT RELIEF ASSOCIATION AND OTHERS.[1]

March 10, 1950.

No. 35,053.

[1]Reported in 41 N. W. (2d) 813.

354

*Smith & Smith,* for appellants.
*Moonan, Moonan & Friedel,* for respondents.

PETERSON, JUSTICE.

Action for a judgment declaratory of plaintiffs' status as members of defendant Faribault Fire Department Relief Association and their rights as such to pensions and benefits. Defendants appeal from the order overruling their demurrer to the amended complaint.

Many questions have been raised. Only one need be decided, and that is whether a statute (L. 1947, c. 43) providing for the organization and government of certain existing fire department relief associations, for the purposes for which they may disburse their funds, including pensions and benefits, and for continuance therein of members who were such as of the effective date of the statute and of payment to them of any pensions or other benefits which had been allowed or which were being paid by any such association under or in accordance with any prior act or acts when the statute became effective, continues in force the memberships of such members and the payment to them of any such pensions and benefits.

There are 26 plaintiffs, all of whom were members of the association as of the effective date of the statute. Some had been members for as long as 54 years and others for only 5 years, but most

of them had been members for 20, 30, 40, and even 50 years. During part of such time the fire department was a voluntary one. Its fire fighters were paid only a nominal amount for their services— $1 per fire. They paid dues in such ample amount as to accumulate $29,000 at the effective date of the statute, attended meetings, served on committees, and otherwise gave of their time and effort in the service of the association. The defendants are the association, its treasurer, and certain individuals alleged to have an interest in the litigation.

The association is in all things governed by L. 1947, c. 43, as amended by L. 1949, c. 154. So far as here material, the statute (§ 2) provides that the association shall be organized, operated, and maintained by firemen as therein defined; that (§ 3) a "fireman" is "one who is regularly entered on the payroll of one of said fire departments serving on active duty, with a designated fire company therein, or having charge of one or more of said companies and engaged in the hazards of fire fighting," and certain other enumerated fire department employes; that (§ 3) "All persons who are members of such relief association at the time of the passage of this act but whose status is not embraced within the definition of a fireman herein contained, shall be entitled to have the right to continue as members of their respective associations and be entitled to any pensions or other benefits which have been allowed or which are being paid by such relief associations under or in accordance with any prior act or acts at the time this act becomes effective. Payment of such pensions and benefits shall be continued by the respective associations"; that (§ 16) the funds of the association shall be disbursed for the following purposes: "(a) For the relief of sick, injured and disabled members of the relief association, their widows and orphans, (b) For the payment of disability and service pensions to members of such relief associations, and salaries for its officers and premiums on their official bonds"; that (§ 17) the association "shall in its by-laws define the sickness and disability entitling its members to relief, and specify the amount thereof, and also specify the amounts to be paid to its disability and service

pensioners, and to widows and children of deceased members, subject to and in accordance with the provisions of this act"; that (§ 20) a member of the association of certain age and after certain duration of service shall be entitled to a pension; and that (§ 23) the widow and children of a pensioner or active member of the association shall be entitled to certain benefits upon his death.

Defendant relief association was incorporated in 1895 under G. S. 1878, c. 34, title 3, and acts amendatory thereof. The purpose of the association is declared in the articles of incorporation to be "to create, secure and establish a fund * * * for the relief of its members injured or disabled while in the discharge of their duty, whether by accident or sickness from exposure, and for the payment of a certain sum, to be established by the By-Laws of the Corporation, to the widows and orphans of any members whose death may occur from any of the said causes while a member of the Association."

The association adopted by unanimous vote at least two constitutions and two sets of bylaws, one in 1928 and the other in 1941. So far as here material, the constitutions provide that the object of the association "shall be to provide means for the relief of the distressed, injured, sick or disabled members thereof; and in case of the death of a member, to pay the legal representatives, or widow and children of such deceased member, whose death may occur while a member of said Association, such sum as may be prescribed by the By-Laws"; that only an active fireman under 50 years of age and a member in good and regular standing of, and actively serving as a fireman in the fire department of the city of Faribault may become a member of the association; that all members retired from active service in the department shall pay all dues and assessments the same as other members of the association; and that all members of the relief association shall be ready at all times to respond to the call of the chief of the fire department.

The bylaws, so far as here material, provide that any member who resigns or leaves the fire department, except in certain cases, may retain his membership in the association upon payment of

dues and compliance with its rules and regulations; that a member of the association in good standing shall be entitled to certain benefits during sickness or disability; and that upon the death of any member of the association certain death benefits shall be paid.

The association, pursuant to its constitution and bylaws, has paid sickness, disability, and death benefits to retired members of the fire department who retained their membership in the association. For example, between 1937 and 1946 benefits were paid upon the deaths of 17 retired members. Authorization for all such benefits was claimed under statutes[2] and the opinions of the attorney general.[3] The statutes contain provisions (§§ 16, 18) authorizing the disbursement of a firemen's relief association's funds for the relief of sick, injured, or disabled members of the fire department, (§ 23) payment of death benefits, and (§§ 20, 21) for service pensions to retired members. Defendant relief association has paid such pensions and benefits regardless of whether there was causal connection between the sickness, disability, or death for which they were paid and service as a fireman of either the recipient or deceased respectively. Defendants in effect admit that such is the fact, but contend that such payments were, and are, unauthorized under our decision in Renz v. Hibbing Firemen's Relief Assn. (1932) 186 Minn. 370, 376, 243 N. W. 713, 715, where we held that "injuries or sickness which permit the granting of a pension * * * must have a causal connection with the 'service in the fire department'" and by reason of the provisions of L. 1947, c. 43, under which only active firemen, as there defined, must be members of the association.

The arguments of counsel have exhaustively analyzed and discussed the applicable statutes and the opinions of the attorney gen-

[2]7 M. S. A. 69.04, 69.06, and their statutory predecessors referred to in the footnotes.

[3]Report Attorney General, 1944, No. 184; Opinions Attorney General, No. 688-M, June 4, 1943, April 30, 1943, and March 12, 1937; Report Attorney General, 1936, No. 30; Opinion Attorney General, No. 688-M, May 11, 1931, and prior opinions therein referred to. See, Opinion Attorney General, No. 198-B-6-d, May 20, 1948, reiterating the views expressed in prior opinions.

eral. They demonstrate that there is much to support the conflicting views of the parties. While our decision in the Renz case may have decided at least some, if not all, of the questions contrary to plaintiff's contentions, apparently the decision was not called to the attention of the officers of the association, and they administered its affairs as if the decision had never been rendered. Opinions of the attorney general, both before and after our decision in the Renz case, held that action taken by the association was in accordance with law. We do not deem it necessary to analyze and discuss either the statutes or the opinions of the attorney general, for the reason that here decision in favor of plaintiffs is compelled by the construction of L. 1947, c. 43, which we shall adopt.

As in the case of other statutes, L. 1947, c. 43, is to be construed in the light of its subject matter, history, and purposes. Considered as a whole, the statute evinces an intention not only to provide new organization and government of fire department relief associations to which it is applicable, to define the purposes for which their funds may be disbursed, and to repeal by implication all laws in force at its effective date so far as they were inconsistent therewith, but also to preserve as of such date the rights of members in fact of such associations to both membership and to pensions and benefits. The part of § 3 quoted above is weighted with tokens of meaning that such existing rights are to be preserved. It is apparent therefrom that the legislature was familiar, as it should be presumed it was, with the affairs and practice of defendant association, and that it intended not only to legalize what had occurred, but also to authorize the same in the future so far as its members in fact at the effective date of the statute were concerned. The provision therein (§ 3), to the effect that all persons who were members of a relief association at the effective date of the statute, but whose status was not that of firemen as defined in the statute, should continue to have rights as members and be entitled to pensions or other benefits which were being paid under or in accordance with any prior act or acts, betokens a legislative intention to preserve the memberships of members in fact, regardless of whether

they were such *de jure,* and the rights of such members to pensions and benefits as incidents of such memberships. The language of the statute is that such members shall have the right "to continue" as such—not that they might become members if they could qualify. The obvious meaning of the word "continue" under the circumstances is "to remain unchanged." Also, the statute declares (§ 3) that such members "shall be entitled to * * * any pensions or other benefits which have been allowed or which are being paid by such relief associations under or in accordance with any prior act or acts at the time this act becomes effective." At the effective date of the act, as has been pointed out, defendant association was paying sickness, disability, and death benefits. It is apparent from the language of the statute just quoted that the legislature had such practice in view and that it intended not only to legalize it as to the past, but also to authorize it, so far as members as of the effective date of the statute were concerned, in the future. There were cogent reasons for so doing. The members in question had established strong equitable claims to the continuance of their memberships and the pensions and benefits dependent thereon by long-continued membership, payment of dues, the expectations of pensions and benefits raised thereby, and the hardship and injustice which the denial thereof would entail. As to such members, the statute directs (§ 3) that "Payment of such pensions and benefits shall be continued * * *"—thus *continuing* not only the memberships, but the pensions and benefits incidental thereto. It is undisputed that, while pensions and benefits paid by defendant association may not have been in strict accordance with prior acts, there was at least reasonable basis for believing that they were and that all concerned acted in the bona fide belief that such was the fact. By the language that the pensions and benefits being paid "under or in accordance with any prior act or acts" at the effective date of the statute shall be continued, the legislature recognized the legality of the association's payment thereof prior to enactment of the statute, and that it authorized such payments afterward as to existing members. The words "under" and "in accordance with" refer to

separate concepts. The word "or" is a disjunctive and ordinarily refers to different things as alternatives. 30 Wd. & Phr. (Perm. ed.) 63. In Patterson v. Camp, 209 Ala. 514, 96 So. 605, it was held that work may be done "under a contract, but not "in accordance with" it. The words "in accordance with" denote a stricter compliance than the word "under." The latter may be used to cover cases which are not in *strict* compliance with a statute, and, where such meaning is apparent, it will be adopted. Straus v. Foxworth, 231 U. S. 162, 34 S. Ct. 42, 58 L. ed. 168. The expressions "under" and "in accordance with" prior acts do not necessarily mean the same thing, and to hold that they do would be to obliterate one of them entirely. Because the word "or" betokens a reference to different things, the difference in meaning between "under" and "in accordance with" should, for lack of showing of any contrary intention, be adopted. It is clear that the purpose of the statute was to legalize as to existing members both classes of cases—those where payments were made "in accordance with" prior acts—that is, in strict compliance therewith—and those in which payments were made "under" such acts—that is, not strictly in accordance therewith. Thus, it follows that the statute set at rest all the questions in dispute between the parties by providing for the *continuance* of plaintiffs' memberships and the payment of pensions and benefits as they existed in fact as of the effective date thereof, regardless of whether they had a strict legal right thereto.

Affirmed.

MR. JUSTICE THOMAS GALLAGHER and MR. JUSTICE FRANK T. GALLAGHER took no part in the consideration or decision of this case.